# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FREEDOM FOUNDATION, a Washington nonprofit organization, | No. 51498-2-II |
| Appellant, | |
| v. | PUBLISHED OPINION |
| WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES ("DSHS"), an agency of the State of Washington, | |
| Respondent. | |

MAXA, C.J. – The Freedom Foundation (Foundation) appeals the trial court's ruling that the Department of Social and Health Services (DSHS) did not violate the Public Records Act (PRA), chapter 42.56 RCW, in responding to the Foundation's requests for records pertaining to at-home care providers (individual providers) who provide personal care services to functionally disabled persons.

The Foundation made a PRA request with DSHS in April 2017, seeking records regarding the time and location of contracting appointments for individual providers and of opportunities for individual providers to view safety and orientation training videos. The Foundation in January 2016 had made a virtually identical request but for an earlier time period. This court affirmed the trial court's denial of an injunction regarding the January 2016 PRA

request in *SEIU 775 v. DSHS*, 198 Wn. App. 745, 396 P.3d 369, *review denied* 189 Wn.2d 1011 (2017). The April 2017 request was made on the same day that this court issued its decision in *SEIU 775*.

DSHS notified the Foundation that it would not be able to produce the records responsive to the April 2017 PRA request until about June 13. DSHS also informed SEIU, the union representing the individual providers, and the SEIU Healthcare NW Training Partnership (Training Partnership) of the Foundation's PRA request. The Training Partnership responded by requesting from DSHS the same records the Foundation had requested. DSHS produced the records to the Training Partnership in installments on May 12 and June 9 and set deadlines for the Training Partnership to enjoin production of the records to the Foundation. But DSHS did not produce the same records to the Foundation until later. The Foundation filed suit against DSHS, claiming that DSHS's conduct in responding to the April 2017 request violated the PRA. The trial court dismissed the lawsuit.

We hold that (1) the Foundation's lawsuit was not untimely even though the Foundation filed its compliant before DSHS took a final action on its PRA request, (2) DSHS's estimate of the time needed to respond was reasonable because DSHS's regional and area offices needed time to compile the responsive records, (3) DSHS did not unlawfully distinguish between the Foundation and the Training Partnership because the PRA allows an agency to delay production of requested records to allow a person affected by the production to obtain a court order preventing disclosure, and (4) DSHS did not violate the PRA by failing to produce the records to the Foundation on June 9, 2017.

Accordingly, we affirm the trial court's judgment dismissing the Foundation's lawsuit.

FACTS

*Original PRA Request*

The Foundation filed a PRA request with DSHS on January 12, 2016, requesting "[t]he times and locations of all contracting appointments for individual providers" and the "times and locations of any state-sponsored or facilitated opportunities for individual providers to view the initial safety and orientation training videos," both between November 1, 2015 and December 31, 2016. Clerk's Papers (CP) at 40.

SEIU sought an injunction to prevent DSHS from releasing the requested records. *SEIU 775*, 198 Wn. App. at 747. The trial court denied SEIU's request and SEIU appealed. *Id.* at 749. This court issued a stay prohibiting DSHS from releasing the records while the case was pending on appeal. This court subsequently held that the requested records did not fall within an exception to the PRA and affirmed the trial court's denial of SEIU's request for an injunction. *SEIU 775*, 198 Wn. App. at 756-57. The opinion was issued on April 25, 2017. *Id.* at 745.

*The Foundation's April 25, 2017 PRA Request*

On the same day that this court filed its April 25 opinion in *SEIU 775*, the Foundation filed a new PRA request. The Foundation requested "[t]he times, dates, and locations of all contracting appointments for individual providers" and the "times, dates, and locations of all state-sponsored or facilitated opportunities for individual providers to view the initial safety and orientation training videos," both between January 1 and December 31, 2017. CP at 410.

DSHS responded on May 2, which was within five business days of the Foundation's request. In order to locate and assemble the responsive records, the DSHS public records officer needed to contact three regional offices and 14 area offices. And on the same day that DSHS received the Foundation's request, DSHS also received approximately 79 other PRA requests

3

and already was processing about 60 PRA requests. DSHS stated in its response letter, "Due to workload, the number of other pending requests and the scope of your request, we estimate it will take up to 30 business days or until about June 13, 2017, to find, review, copy and produce any available records." CP at 311.

*The Training Partnership's May 8, 2017 PRA Request*

Also on May 2, DSHS notified SEIU and the Training Partnership that it had received a PRA request and that the responsive records related to SEIU and union members. DSHS informed SEIU and the Training Partnership that they had until May 16 to seek an injunction preventing the release of the requested records.

On May 8, the Training Partnership replied that it typically received a copy of responsive records before determining if it was appropriate to seek an injunction and requested that DSHS provide a copy of the records. DSHS treated this request for records as a PRA request. DSHS responded to the Training Partnership's request by producing some of the requested records on May 12. DSHS also extended the deadline for the Training Partnership to obtain an injunction to May 26.

*Subsequent Developments*

On April 26, 2017, this court had entered an order stating that the previously issued stay prohibiting DSHS from releasing the records sought in the January 2016 PRA request would continue in force until a mandate was issued. The parties disagreed whether the stay extended to the April 2017 request. On May 15, this court issued a stay prohibiting the release of the records responsive to the April 2017 PRA request pending further briefing on the issue. DSHS informed the Training Partnership on June 2 that it could not produce the remainder of the requested records because of the stay.

On June 9, this court entered an order clarifying that DSHS was not enjoined from releasing the records the Foundation requested in its April 2017 PRA request. On that same day, the Foundation emailed DSHS and stated its expectation that the requested records would be produced by the end of the day. Counsel for DSHS replied, "DSHS previously sent a letter estimating its response date. We will let you know if there are changes to that estimated time frame." CP at 308. Also on June 9, DSHS produced to the Training Partnership the reminder of the records it had requested on May 8. DSHS extended the deadline for the Training Partnership to obtain an injunction to June 12.

Meanwhile, on May 24 SEIU had filed a petition for discretionary review of this court's decision in *SEIU 775* with the Supreme Court. On June 12, SEIU notified DSHS and the Foundation that it planned to file an emergency motion in the Supreme Court to enjoin DSHS from releasing the records sought in the Foundation's April 2017 PRA request. DSHS told the Foundation that it would not release those records to the Foundation pending receipt of the motion. On June 13, the Supreme Court temporarily enjoined DSHS from releasing records in response to the Foundation's April 2017 PRA request. The temporary stay expired on July 10.

On July 11, DSHS produced to the Foundation the records responsive to its April 2017 PRA request. The records produced consisted of a 12-page spreadsheet providing the information the Foundation had requested.

*Lawsuit Against DSHS*

On June 12, the Foundation filed a complaint against DSHS based on its April 2017 PRA request. The Foundation alleged that DSHS had violated the PRA by providing an unreasonable estimate of the time necessary to respond to the request. In its answer to the Foundation's

complaint, DSHS argued that the Foundation's claims were untimely because the agency had not yet taken a final action on the Foundation's PRA request.

The Foundation did not assert claims for other PRA violations relating to the delay in producing records in its complaint. Those claims were first asserted in the Foundation's summary judgment motion in October 2017.

In November, the trial court held a hearing on the merits pursuant to RCW 42.56.550(2).[1] The Foundation argued that DSHS had violated the PRA by (1) providing an unreasonable time estimate, (2) distinguishing between requestors, (3) failing to provide the fullest and timeliest assistance, and (4) delaying the release of records. DSHS argued that the trial court should dismiss the Foundation's claims because the Foundation's lawsuit was filed before DSHS produced the records, and therefore was not timely.

The trial court issued written findings of fact and conclusions of law. The court initially concluded that all of the Foundation's claims were properly before the court. Regarding DSHS's time estimate, the court found that at the time of the estimate DSHS had over 2,000 public records requests and that DSHS had received over 50 PRA requests on the same day as the Foundation's request. The court also found that the records the Foundation requested were located in multiple different offices. The court concluded that (1) DSHS's estimate of time was reasonable under former RCW 42.56.520 (2010), (2) DSHS did not unlawfully distinguish between requestors and therefore did not violate former RCW 42.56.080 (2016), (3) any disparity in the timing of production between the Training Partnership and the Foundation was lawful, and (4) DSHS provided the fullest and most timely assistance to the Foundation and

_____

[1] RCW 42.56.550 was amended in 2017. LAWS OF 2017, ch. 304, § 5. Because those amendments do not affect our analysis, we cite to the current version of the statute.

therefore did not violate RCW 42.56.100. Accordingly, the trial court dismissed the

Foundation's lawsuit with prejudice.

The Foundation appeals the trial court's order dismissing its complaint against DSHS.

ANALYSIS

A.      PRA DISCLOSURE

"The PRA mandates the broad disclosure of public records." *SEIU 775*, 198 Wn. App. at

749. Accordingly, state agencies have "an affirmative obligation to disclose records requested

under the PRA unless a specific exemption applies." *Id.* We review de novo an agency's action

in responding to a PRA request. RCW 42.56.550(3). And we stand in the same position as the

trial court on PRA matters when the record consists of only documentary evidence. *West v. City

of Puyallup*, 2 Wn. App. 2d 586, 592, 410 P.3d 1197 (2018).

The PRA must be liberally construed to "assure that the public interest will be fully

protected." RCW 42.56.030. "The language of the PRA must be interpreted in a manner that

furthers the PRA's goal of ensuring that the public remains informed so that it may maintain

control over its government." *Wade's Eastside Gun Shop, Inc. v. Dep't of Labor and Indus.*, 185

Wn.2d 270, 277, 372 P.3d 97 (2016).

B.      PREMATURE FILING OF COMPLAINT

Initially, DSHS argues that the Foundation's claims are not timely for judicial review

because the agency had not taken a final action at the time that the Foundation filed its

complaint. DSHS argues that a party can only seek judicial review of final actions by an agency.

We disagree.[2]

---

[2] The Foundation also argues that DSHS waived this issue by not cross-appealing the trial court's
conclusion that all the Foundation's claims were properly before the court. However, a cross-
appeal is required only if the respondent is seeking affirmative relief rather than urging

Under RCW 42.56.550, a party may seek judicial review of an agency action under the PRA. In an action challenging an agency's *denial* of a records request, a requestor cannot initiate a lawsuit until the agency has denied and closed the request at issue. *John Doe L. v. Pierce County*, 7 Wn. App. 2d 157, 197, 433 P.3d 838 (2018), *review denied* 193 Wn.2d 1015 (2019). If an agency has not yet produced the requested records but has not stated that it will refuse to produce them, the agency has not denied access to the records for purposes of judicial review. *See Hobbs v. State Auditor's Office*, 183 Wn. App. 925, 936-37, 335 P.3d 1004 (2014) (holding that requestor could not initiate a lawsuit while the agency was still providing installments of responsive records).

However, in the context of an agency's estimate of the time needed to respond to a PRA request, RCW 42.56.550(2) states that any person may bring a motion in superior court to require the agency to show why the estimate of time was reasonable. RCW 42.56.550(2) does not require an agency to take a final action before a party can challenge the agency's estimate of the time needed to respond and no case has imposed such a requirement. Therefore, because the Foundation's lawsuit did not involve the denial of its request, we hold that the final action requirement does not apply to the Foundations' reasonable time estimate claim.

The Foundation's other claims relate to DSHS allegedly distinguishing between the Foundation and the Training Partnership and the failure to produce the records on June 9, 2017. However, the Foundation did not plead these claims in its complaint. They were first raised in the Foundation's motion for summary judgment in October 2017, and more fully argued in the

---

additional grounds for affirming the trial court. *Modumetal, Inc. v. Xtalic Corp.*, 4 Wn. App. 2d 810, 834-35, 425 P.3d 871 (2018), *review denied* 192 Wn.2d 1011 (2019). "A prevailing party that seeks no further affirmative relief from the appellate court may argue any grounds in support of the trial court's order that are supported by the record." *Id.* at 834.

hearing on the merits on November 17. Therefore, these claims were not asserted until after

DSH's final action – the production of the requested records – on July 11, 2017.[3]

## C.    REASONABLE ESTIMATE OF TIME TO RESPOND

The Foundation argues that DSHS provided an unreasonable estimate of the time needed

to respond to its request in violation of former RCW 42.56.520. We disagree.

### 1.    Legal Principles

Former RCW 42.56.520 requires an agency to respond to a PRA request within five

business days. An agency must provide the records, deny the request, or respond in one of three

other ways. Former RCW 42.56.520. One of those ways is to acknowledge receipt of the

request and provide "a reasonable estimate of the time the agency . . . will require to respond to

the request." Former RCW 42.56.520(3). This statute does not require the agency to provide an

explanation for its time estimate. *See Ockerman v. King County*, 102 Wn. App. 212, 217-18, 6

P.3d 1214 (2000) (addressing earlier version of statute).

Former RCW 42.56.520 provides guidance regarding an agency's reasonable estimate

response:

> Additional time required to respond to a request may be based upon the need to
> clarify the intent of the request, to locate and assemble the information requested,
> to notify third persons or agencies affected by the request, or to determine whether
> any of the information requested is exempt and that a denial should be made as to
> all or part of the request.

However, it does not appear that any Washington court has discussed in detail what factors

determine whether an agency's estimate of the additional time needed to respond to a PRA

request was reasonable, and the parties cite no authority discussing this issue.

---

[3] Under CR 15(b), a court may address issues not raised in the pleadings if the issues are tried by express or implied consent of the parties. DSHS does not argue that the trial court should not have considered these claims because they were not included in the Foundation's complaint.

The PRA provides a cause of action "when an agency has not made a reasonable estimate of the time required to respond to the request." *Andrews v. Wash. State Patrol*, 183 Wn. App. 644, 651, 334 P.3d 94 (2014); *see* RCW 42.56.550(1). In a judicial action challenging the reasonableness of a time estimate, the agency has the burden of proof to show that its time estimate was reasonable. RCW 42.56.550(2).

2. Analysis

The Foundation argues that DSHS's time estimate was unreasonable because the scope of the request was narrow, the type of record request was straightforward, and the volume of requested information was low. However, the DSHS public records officer realized that the responsive records were not located in one place and would need to be gathered from many different area and regional offices. In addition, DSHS received approximately 79 other PRA requests on the same day that the Foundation submitted its April 2017 PRA request. Finally, DSHS already was processing about 60 other PRA requests at that time.

DSHS considered how much time it would take to gather and return records from the various offices and then for the public records officer to review the records while also processing other PRA requests. Under these circumstances, we conclude that DSHS's estimate that it would be able respond to the Foundation's request within 30 business days was reasonable.

The Foundation argues that DSHS's estimate was unreasonable because DSHS did not conduct a case-specific investigation into how long it would take to gather the records, such as contacting each of the various offices. However, the Foundation cites no authority for the proposition that an agency must engage in such an investigation each time it must estimate how long producing requested records will take.

10

The Foundation also refers to the time that DSHS needed to actually produce the records to the Training Partnership, which was significantly less than 30 business days. But whether an estimate is reasonable necessarily must be based on a forward-looking evaluation at the time of the estimate, not on a backward-looking evaluation after the fact.

Accordingly, we hold that DSHS provided a reasonable estimate of the time needed to respond to the Foundation's request and therefore complied with former RCW 42.56.520.

D.    TIMING OF DISCLOSURE

The Foundation argues that DSHS unlawfully distinguished between requestors in violation of former RCW 42.56.080 and violated its duty under the PRA to promptly produce the requested records. The Foundation relies on the facts that DSHS produced the requested records to the Training Partnership before producing them to the Foundation and that DSHS did not produce the records to the Foundation when they were ready on June 9, 2017. We disagree.

1.    RCW 42.56.080(2) – Distinguishing Among Requestors

Upon a request for identifiable public records, an agency must make those records promptly available to "any person." Former RCW 42.56.080. Further, former RCW 42.56.080 states that "[a]gencies shall not distinguish among persons requesting records."

The Foundation argues that DSHS violated former RCW 42.56.080 by treating the Foundation differently than the Training Partnership regarding when the requested records were produced. The Foundation and the Training Partnership requested the exact same records. DSHS produced them to the Training Partnership in installments on May 12 and June 9, but did not produce them to the Foundation until July 11 once the Supreme court stay expired.

DSHS argues that the Foundation and the Training Partnership were not similarly situated because the Training Partnership was an affected party for which DSHS was entitled to provide

notice before releasing the records to the Foundation. DSHS claims that an agency can produce requested records to an affected party before producing them to the original requestor without violating former RCW 42.56.080.

        a.    Providing Notice to Affected Party

RCW 42.56.540 states, "An agency has the option of notifying persons named in the [requested] record or to whom a record specifically pertains, that release of a record has been requested." This notice relates to an earlier clause in RCW 42.56.540, which gives an affected person the ability to request an injunction preventing the production of the requested records. The purpose of the notice is to allow affected parties to seek such an injunction. *John Doe v. Benton County*, 200 Wn. App. 781, 789, 403 P.3d 861 (2017), *review denied*, 190 Wn.2d 1006 (2018). However, the agency should notify affected parties only if it has a reasonable belief that the record arguably is exempt from disclosure. *Id.*

Former RCW 42.56.520 further states that the agency may take additional time to respond to a requestor in order to notify third parties "affected by the request." These provisions make it clear that an agency can delay production of requested records to give notice of the records request to an affected person. *John Doe*, 200 Wn. App. at 789. "[T]he PRA allows public agencies to notify affected persons of a public records request and permits a reasonable delay to permit affected parties a 'realistic opportunity' to obtain a protective order." *Wade's Eastside Gun Shop*, 185 Wn.2d at 291 (quoting *Confederated Tribes of Chehalis Reservation v. Johnson*, 135 Wn.2d 734, 758, 958 P.2d 260 (1998)).

However, neither RCW 42.56.540 nor former RCW 42.56.520 state whether an agency is allowed to produce the records to the affected party before producing them to the requestor.

b.    Affected Party Status

Initially, the Foundation argues that whether an agency can treat a person making a PRA request differently than a person who is affected by that request is immaterial because the Training Partnership was not an "affected party" with regard to the Foundation's request. The Foundation claims that the Training Partnership was not an affected party because the requested records did not pertain to the Training Partnership's activities.

The Foundation relies solely on a May 11, 2017 letter from the Training Partnership's attorney to DSHS questioning whether any documents involving the Training Partnership were responsive to the Foundation's requests. But this letter is not determinative of whether the Training Partnership was an affected party. In the same letter, the attorney requested all Training Partnership documents that DSHS believed were responsive to the request in order for the Training Partnership to evaluate whether it needed to seek an injunction.

An agency has wide discretion to determine who affected parties are. *See John Doe*, 200 Wn. App. at 789. Here, the Foundation requested the times and locations of opportunities for individual providers to view training videos. DSHS reasonably could have believed that the Training Partnership was a person "to whom the record specifically pertains." RCW 42.56.540. Therefore, we conclude that DSHS properly treated the Training Partnership as an affected person for purposes of the Foundation's request.

The Foundation also argues that DSHS should not have given notice to the Training Partnership because DSHS had no reason to believe that the requested records were exempt from production. The Foundation points out that this court in *SEIU 775* already had determined that similar records were not exempt. However, the Foundation ignores the fact that SEIU still had the right to seek Supreme Court review of *SEIU 775* and subsequently did so.

c. Distinguishing Between Two Requestors

Even though the Training Partnership was an affected party, it also was a PRA requestor. The Training Partnership requested the records responsive to the Foundation's request, and DSHS treated the Training Partnership's request as a PRA request. The issue here is whether DSHS lawfully could distinguish between the two requestors based on the Training Partnership's status as an affected person. Specifically, the question is whether an agency can produce the records to an affected party before producing them to the requestor.

Determining the scope and meaning of former RCW 42.56.080 requires us to engage in statutory interpretation. The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Randy Reynolds & Assocs., Inc. v. Harmon*, 193 Wn.2d 143, 155, 437 P.3d 677 (2019). To determine legislative intent, we look first to the plain language of the statute. *Id.* We consider the language of the provision at issue, the context of the statute in which the provision is located, and related statutes. *Id.*

When interpreting the PRA, we must "consider the PRA in its entirety to effectuate the PRA's overall purpose." *Hobbs* 183 Wn. App. at 935. We review the language of the provision at issue as well as related statutes. *Randy Reynolds & Assocs.*, 193 Wn.2d at 155; *Hobbs*, 183 Wn. App. at 935. Therefore, we must consider the statutes regarding affected parties in analyzing the application of former RCW 42.56.080.

As noted above, RCW 42.56.540 allows an agency to notify an affected person of a PRA request. And former RCW 42.56.520 states that the agency may take additional time to respond to a requestor in order to provide such notice. The purpose of this notice and the delay in production is to give a person affected by a PRA request time to request an injunction under RCW 42.56.540. *John Doe*, 200 Wn. App. at 789. "Implicit in the statutory right to seek an

injunction to prevent disclosure is a realistic opportunity to apply to the trial court for such an order." *Confederated Tribes of Chehalis Reservation*, 135 Wn.2d at 758.

Consistent with these provisions, an agency may give an affected person a reasonable time within which the person must obtain a court order preventing production of the requested records. *See Wade's Eastside Gun Shop*, 185 Wn.2d at 291. During that time, it is reasonable for the agency to delay production to the requestor. *Id.*; *see also* former RCW 42.56.520.

During the period when the affected person is deciding whether to seek an injunction, the requestor and the affected party are not similarly situated even if they are requesting the same records. An agency cannot lawfully produce the records to the original requestor during that period because the affected person must be given a reasonable opportunity to obtain an injunction. But no such prohibition exists with regard to production of the records to the affected party. And because the affected party in this situation also is a requestor, the agency has an obligation under the PRA to promptly produce the records. Former RCW 42.56.520.

Further, in some situations it may be difficult for an affected party to know whether to seek an injunction without reviewing the requested documents. In those situations, a rule prohibiting an agency from producing the records to the affected party would defeat the purpose of giving notice to the affected party under RCW 42.56.540.

Based on the statutes and cases relating to affected persons, we hold that DSHS did not violate former RCW 42.56.080 by producing the first installment of the records to the Training Partnership. DSHS's original deadline to obtain a court order was May 16, 2017. DSHS produced the first installment on May 12, within that deadline. However, before the deadline expired, on May 15, this court issued a stay prohibiting the release of the records and that stay

remained in effect until June 9. Therefore, DSHS did not violate former RCW 42.56.080 by not producing the records to the Foundation before June 9.

The second installment produced to the Training Partnership on June 9 involves a slightly different situation. The stay no longer was in place on that date, and DSHS was not precluded by court order from producing the records. However, when it produced the records to the Training Partnership, DSHS extended the deadline for obtaining a court order stopping production to the end of the day on June 12. The Foundation provides no authority for the proposition that it was unreasonable for DSHS to extend this deadline by a few days. Because DSHS extended the deadline for the Training Partnership to seek a court order, DSHS could not lawfully have produced the records to the Foundation at the same time it produced the second installment of the records to the Training Partnership.

On June 12, SEIU notified DSHS that it planned to file an emergency motion in the Supreme Court to enjoin DSHS from releasing the records and on June 13 the Supreme Court temporarily enjoined DSHS from releasing records. Therefore, DSHS was not able to produce the records at that time. When the Supreme Court's order expired on July 13, DSHS promptly produced the records to the Foundation.

We hold that DSHS did not violate former RCW 42.56.080 by producing the requested records to the Training Partnership before producing them to the Foundation.

2.    Failure to Promptly Produce the Records

The Foundation argues that DSHS violated the PRA by not providing responsive records to the Foundation on June 9, 2017, when they were available and not subject to a court order. The Foundation claims that DSHS failed to provide the fullest and most timely assistance to the Foundation in responding to its request.

The Foundation relies on RCW 42.56.100, which requires agencies to "adopt and enforce reasonable rules and regulations" to provide full access to public records and for other purposes. Technically, the phrases on which the Foundation relies – "fullest assistance" and "most timely possible action" – refer to those rules and regulations: "*Such rules and regulations shall provide* for the fullest assistance to inquirers and the most timely possible action on requests for information." RCW 42.56.100 (emphasis added); *see also Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 432, 327 P.3d 600 (2013) (stating that RCW 42.56.100 refers to rules and regulations).

Nevertheless, courts have recognized that agencies are required to comply with the principles embodied in RCW 42.56.100. *See Andrews*, 183 Wn. App. at 651 (quoting RCW 42.56.100 and stating that the PRA "requires agencies to provide the 'fullest assistance' and the 'most timely possible action on requests for information' "); *Mitchell v. Dep't. of Corr.*, 164 Wn. App. 597, 607, 277 P.3d 670 (2011) (stating that agencies have a "statutory duty" to provide full assistance to inquirers). In determining whether an agency acted promptly in producing responsive records we examine whether the agency's response was thorough and diligent. *Rufin v. City of Seattle*, 199 Wn. App. 348, 357, 398 P.3d 1237 (2017), *review denied* 189 Wn.2d 1034 (2018). Whether the agency responded with reasonable thoroughness and diligence is a fact-specific inquiry. *Id.* at 358.

The Foundation relies on *Wade's Eastside Gun Shop.*, 185 Wn.2d 270, for the proposition that an agency cannot delay releasing records once they are available. In that case, the agency gave an estimated production date and did not produce records before that date even though they became available much sooner. *Id.* at 289. The court stated, "While agencies may provide a reasonable estimate of when they can produce the requested records, . . . they cannot

use that estimated date as an excuse to withhold records that are no longer exempt from disclosure." *Id.*

Here, unlike in *Wade*, the requested records were not available to produce to the Foundation on June 9. On that date, DSHS extended the deadline for the Training Partnership to obtain an injunction to prevent disclosure of the records until the end of the day on June 12. As discussed above, an agency can delay the production of records to give an affected person a realistic opportunity to obtain an injunction. *See Wade's Eastside Gun Shop*, 185 Wn.2d at 291; former RCW 42.56.520. Under these circumstances, it was not unreasonable for DSHS to wait until June 13 to produce the records to the Foundation. Unfortunately, the Supreme Court's order precluded DSHS from actually producing the records until July 11.

Accordingly, we hold that DSHS did not violate the PRA by not producing the requested records to the Foundation on June 9, 2017.

### CONCLUSION

We affirm the trial court's order dismissing the Foundation's claims.

MAXA, C.J.

We concur:

LEE, J.

CRUSER, J.

18