# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| AMANDA THORNEWELL,<br><br>Appellant,<br><br>v.<br><br>SEATTLE SCHOOL DISTRICT NO. 1,<br><br>Respondent. | No. 85998-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — In this public records case, requester Amanda Thornewell challenges the trial court's order denying her motion for summary judgment and granting Seattle School District No. 1's (District) motion for partial summary judgment. Thornewell also challenges the trial court's order striking evidence of settlement negotiations, and requests costs, attorney fees, and penalties under the Public Records Act (PRA), chapter 42.56 RCW. Because the District did not assert a public records exemption, answered Thornewell's request with diligence, and produced all responsive records, we affirm.

I

Thornewell filed a complaint on behalf of her son with the Seattle School District's Office of Student Civil Rights (OSCR). The District opened an investigation into the complaint. Thereafter, on March 4, 2020, Thornewell's lawyer e-mailed a public records request to the District. He requested five categories of records and expressed a preference for "installments as they become

available." The request did not mention prioritization. The five categories of records requested were:

- All records, including recordings and text messages or any other communication method being utilized by staff (please interpret all requests here to encompass these options), related to investigations by the Office of Student Civil Rights regarding allegations of and by Alex Thornewell and his parents Amanda [e-mail address omitted] and Peter Thornewell [e-mail address omitted].

- Records related to any investigation focusing on incidents related to the Garfield Swim Team during the 2019-2020 school year. Athletic Director Carole Lynch was believed to have initiated an investigation but this request is not limited solely to her records.

- Any communications or notes of such between Tim Zimmerman and Greg Barnes of Garfield High School since December 1, 2019.

- Any communications between Garfield High School administration and its school newspaper related to any story about the swim team *or* hazing during the 2019-2020 school year.

- Any emails or messaging system records (text, What's App [sic],[1] etc.) mentioning or referring to Alex Thornewell or his parents since December 1, 2019.

Public Records Officer Randall Enlow responded to the request within five business days, as required by the PRA. RCW 42.56.520(1). His response anticipated that, because of the District's "current volume of open requests" and

---

[1] "WhatsApp" is a free, instant messaging application that supports sending and receiving a variety of media, including text, photos, videos, documents, and voice calls. *About WhatsApp*, WHATSAPP LLC, https://www.whatsapp.com/about/, [https://perma.cc/36Q6-BYE4].

the "potential volume/complexity" of Thornewell's request, the District would provide "at least an installment" by May 29, 2020.

The District produced records in seven installments, starting on May 29, 2020, as originally anticipated, and on July 23, 2020, September 17, 2020, November 12, 2020, January 21, 2021, February 10, 2021, and February 26, 2021. In total, the District provided 1,801 pages of responsive records to Thornewell. Starting with the initial response, and continuing with each installment production, Enlow provided an estimate for the date of the next records installment release. Each installment was released by its estimated deadline. In a later declaration, Enlow estimated he spent 5 to 10 percent of his time working on the Thornewell request, said he was working on 100 other public records requests contemporaneously, and thought "11 months . . . a very standard amount of time to fulfill a request of this scope." The Thornewell request was closed on February 26, 2021, after the seventh records installment was produced. The District produced all records responsive to the request and withheld no records.[2]

At the time Thornewell made the public records request, the District was investigating Thornewell's civil rights complaint. Internal e-mails show that the District postponed producing some of those records until the last two installments. Enlow's supervisor Tina Meade, advised him that due to the open OSCR investigation there was a need "to discuss further what documents can be

---

[2] Thornewell contested whether 10 pages of responsive records should have been identified and produced if the District had conducted a reasonable search. At the summary judgment hearing, Thornewell conceded that the District's search was adequate.

excluded while the investigation is ongoing."  Meade e-mailed a senior legal assistant stating, "We are not going to release records due to the ongoing investigation."  Roxane O'Connor, assistant legal counsel and public records officer at the District, suggested to Enlow he connect with Robert Veliz, the investigator assigned to the OSCR investigation, and she expressed concern about whether the investigation was closed and whether any of the records were exempt under RCW 42.56.280.  This section exempts certain "[p]reliminary drafts, notes, recommendations, and intra-agency memorandums" expressing opinion or formulating or recommending policy.  RCW 42.56.280.  After confirming with Veliz that the investigation was ongoing, Enlow replied that "the records are exempt so long as the investigation is ongoing.  Ideally, we can get the records earlier . . . but it also works just fine to send the file once the investigation wraps up."

Later, O'Connor e-mailed Enlow telling him that, for purposes of the exemption log, former RCW 42.56.250(6) (2020) did not apply but she thought RCW 42.56.280 was the applicable exemption.  Former RCW 42.56.250(6), now codified at RCW 42.56.250(1)(f), LAWS OF 2023, ch. 458, § 1, exempts investigative records "compiled by an employing agency in connection with an investigation of a possible unfair practice" under certain labor laws.  Enlow e-mailed Veliz asking for responsive records for the Thornewell request and told him, "We are closing this public records matter soon (sending what looks to be the last non-exempt, responsive installment tomorrow) and we need to assess what exempt

investigative materials/notes existed at the time of the request for purposes of the listing in our exemption log."

The OSCR investigation concluded on January 28, 2021. The District produced a sixth installment on February 10, 2021, and a seventh, and final, installment on February 26, 2021. Approximately one year later, Thornewell filed suit against the District, alleging the District had violated the PRA by erroneously relying on the investigatory records exemptions during its processing of the request. Thornewell maintains that the entire sixth installment, 122 pages, was wrongfully withheld. Thornewell also claims the seventh installment included records related to the OSCR investigation. Thornewell does not contend that the timeframe in which the District produced the overall 1,801 pages of records was unreasonable. When asked by the trial court, "Are you asserting any other lack of due diligence in the timeliness of the overall production in the seven installments separate and apart from the investigatory records?" Thornewell replied, "We are not." The District agreed that the investigatory records exemptions would not have applied, but the parties disagreed whether the District ever applied them.

The trial court granted the District's summary judgment motion. At the summary judgment hearing, the court stated,

> [T]here is no other objection by plaintiff as to the timeliness of the records except for [the sixth] installment. And this installment was delayed by an initial misunderstanding of the exception that did apply, but yet the Department then turned around and produced all of the records, and, therefore, there were no records not produced, and there was no need for a privilege log because all of the records were produced.

5

The trial court concluded the District did not need to produce an exemption log because no exemption was applied, the District did not engage in silent withholding, and there was no constructive denial.

II

Thornewell claims that the District's erroneous reliance on the investigatory records exemption led it to violate the PRA by withholding responsive records that should have been made available sooner. The District produced 1,801 pages of records, in 7 installments, and Thornewell did not dispute that the overall time in which the records were produced was timely. Thornewell took issue with the timeliness of a subset of the records, chiefly installment 6. She claims that but for the District's erroneous reliance on an exemption, she would have received some records sooner.

"The PRA is a strongly worded mandate for broad disclosure of public records." Rental Hous. Ass'n. of Puget Sound v. City of Des Moines, 165 Wn.2d 525, 535, 199 P.3d 393 (2009). The PRA is to be liberally construed, while its exemptions are to be narrowly construed. RCW 42.56.030. Each agency must make public records available for inspection and copying, unless the records fall within a specific exemption. RCW 42.56.070(1). We review agency actions taken or challenged under the PRA de novo. RCW 42.56.550(3); Neigh. All. of Spokane County v. Spokane County, 172 Wn.2d 702, 715, 261 P.3d 119 (2011). When reviewing actions taken under the PRA, we stand in the same position as the trial court when the record consists only of documentary evidence. Freedom Found.

v. Dep't of Soc. & Health Servs., 9 Wn. App. 2d 654, 663, 445 P.3d 971 (2019). To recover penalties and other relief under the PRA, Thornewell must prevail against the District in "seeking *the right to inspect or copy* any public record or *the right to receive a response to a public record request within a reasonable amount of time.*" RCW 42.56.550(4) (emphasis added). Because the District produced all records requested in timely responses, she does neither.

A

The District concedes the investigatory records exemptions were not applicable to the contested records in the sixth and seventh installments. The first question is whether the District violated the PRA by actually applying an exemption, as asserted by Thornewell, or if instead, the District engaged in internal processes that never rose to the level of asserting an exemption.

1

The PRA allows an agency time to determine whether an exemption applies, stating,

> Additional time required to respond to a request may be based upon the need to clarify the intent of the request, to locate and assemble the information requested, to notify third persons or agencies affected by the request, *or to determine whether any of the information requested is exempt* and that a denial should be made as to all or part of the request.

RCW 42.56.520(2) (emphasis added).

Citing Gipson v. Snohomish County, 194 Wn.2d 365, 372, 449 P.3d 1055 (2019), Thornewell claims that agencies are required to determine whether a record is exempt at the time that the request is received. This mischaracterizes

the holding of Gipson, and disregards the plain language of RCW 42.56.520(2). In Gipson, the court was concerned with the question whether a properly applied exemption, which was valid on the date that the request was made, continued to be in effect throughout the life of the request, even as the agency produced record installments, some of which postdated the exemption's expiration. Gipson, 194 Wn.2d at 367. The court held any valid exemptions at the time of the request continue to be effective throughout the life of request, even as records are produced in installments. Id. at 374. The purpose of this rule is to "put[] the requester on notice as to the nature of the exemption," so that they can "submit a 'refresher request' after receiving an installment controlled by the claimed exemption." Id. Gipson holds that the agency determines the applicability of an exemption by asking whether a record is exempt on the date of the request. Id. It does not mean that the agency must make the determination that day nor eliminate the contemplation of the PRA that the agency is afforded a reasonable time in which to respond, provided it does so timely and with diligence. This is consistent with Sanders v. State, 169 Wn.2d 827, 848, 240 P.3d 120 (2010), which held that an agency may amend its justification for withholding a document in litigation to avoid forcing agencies into potentially excessive initial claims of exemption to avoid waiver. The District satisfied its obligation by responding within five business days with a reasonable estimate for the production of records. RCW 42.56.520(1).

2

When an agency refuses, in whole or in part, inspection of any public records, the response "shall include a statement of the specific exemption authorizing the withholding of the records (or part) and a brief explanation of how the exemption applies to the record withheld." RCW 42.56.210(3). When an agency has not yet produced requested records, but "has not stated that it will refuse to produce them, the agency has not denied access to the records for purposes of judicial review." Freedom Found., 9 Wn. App. 2d at 664. "When an agency produces records in installments, the agency does not deny access to the records until it finishes producing all responsive records." Cortland v. Lewis County, 14 Wn. App. 2d 249, 258, 473 P.3d 272 (2020).

In each case cited by Thornewell, the agency handling the public records request affirmatively asserted an exemption to the requester.[3] The District was in

---

[3] Cowles Publ'g Co. v. Spokane Police Dep't, 139 Wn.2d 472, 475, 987 P.2d 620 (1999) (police responded to journalist's records request by refusing to release investigative records); Gipson, 194 Wn.2d at 368-69 (county provided records in installments, redacted files, provided a withholding log, and closed the request while still withholding documents); Progressive Animal Welfare Soc'y v. Univ. of Wash, 125 Wn.2d 243, 250, 252, 884 P.2d 592 (1994) (university denied records request and claimed many exemptions); Rental Hous., 165 Wn.2d at 528-29 (city refused to turn over records and failed to provide exemption log); Sanders, 169 Wn.2d at 837 (agency responded to request with disclosed but partially redacted and withheld records that lacked sufficient exemption explanations); Wade's Eastside Gun Shop, Inc. v. Dep't of Lab. & Indus., 185 Wn.2d 270, 284, 372 P.3d 97 (2016) (agency responded to request by asserting that records were exempt due to ongoing investigations); Cantu v. Yakima Sch. Dist. No. 7, 23 Wn. App. 2d 57, 68-69, 71, 98, 100-01, 514 P.3d 661 (2022) (school district repeatedly tried to close request without providing responsive records, failed to provide exemption logs for redacted records, and asserted exemptions unreasonably); Zink v. City of Mesa, 162 Wn. App. 688, 723, 256 P.3d 384 (2011) (requester was denied records by city when it asserted attorney-client privilege exemption).

the process of producing installments for Thornewell from March 2020 until February 2021. It provided exemption logs for other records included in the request. It produced the investigation records before closing the request, and without ever claiming an exemption for them. The District did not tell Thornewell it was refusing or denying her access to the investigation records, nor did it claim exemptions for them with an exemption log. Because it produced responsive records within a reasonable time, the District did not assert an exemption. And because the District did not withhold records, or apply an exemption, it was not obligated to provide a statement and explanation for investigative records under RCW 42.56.210(3).

B

Silent withholding under the PRA occurs when an agency fails " 'to reveal that some records have been withheld in their entirety.' " Rental Hous., 165 Wn.2d at 537 (quoting Progressive Animal Welfare Soc'y v. Univ. of Wash, 125 Wn.2d 243, 270, 884 P.2d 592 (1994) (PAWS II)). This has the effect of " 'giv[ing] requesters the misleading impression that all documents relevant to the request have been disclosed.' " Id. (quoting PAWS II, 125 Wn.2d at 270). "Claimed exemptions cannot be vetted for validity if they are unexplained." Sanders, 169 Wn.2d at 846. The PRA "clearly and emphatically prohibits silent withholding by agencies of records relevant to a public records request." PAWS II, 125 Wn.2d at 270. At the same time, "installments are not new stand-alone requests. Rather, installments fulfill a single request and should be treated as such." Gipson, 194

10

Wn.2d at 372. The District did not engage in silent withholding where it timely and diligently produced all responsive records even though it mistakenly believed at the start of its process that some of the records it ultimately produced were exempt.

C

The PRA requires that agencies adopt and enforce reasonable rules and regulations that "shall provide for the fullest assistance to inquirers and the most timely possible action on requests for information." RCW 42.56.100. One way that the PRA facilitates this command is by directing agencies to "make [public records] promptly available to any person . . . on a partial or installment basis as records that are part of a larger set of requested records are assembled or made ready for inspection or disclosure." RCW 42.56.080(2).

An agency's failure to meet these statutory requirements, through inaction, delay, or lack of diligence, can ripen into constructive denial of the request for purposes of fees, costs, and penalties under the PRA. Cantu v. Yakima Sch. Dist. No. 7, 23 Wn. App. 2d 57, 88-89, 514 P.3d 661 (2022). " '[A] denial of public records occurs when it reasonably appears that an agency will not or will no longer provide responsive records.' " Id. at 90 (quoting Hobbs v. State, 183 Wn. App. 925, 932, 335 P.3d 1004 (2014)). "Whether an agency's lack of diligence amounts to a constructive denial is a question of fact."[4] Id. at 93 (citing Freedom Found., 9 Wn.

---

[4] Elsewhere this fact-specific inquiry is articulated as whether the agency acted with "reasonable thoroughness and diligence." Freedom Found., 9 Wn. App. 2d at 673 (citing Rufin v. City of Seattle, 199 Wn. App. 348, 357, 398 P.3d 1237 (2017)); Andrews v. Wash. State Patrol, 183 Wn. App. 644, 646, 334 P.3d 94 (2014).

App. 2d at 673). Courts "apply an objective standard from the viewpoint of the requester." Id. at 94 (citing Violante v. King County Fire Dist. No. 20, 114 Wn. App 565, 571, 59 P.3d 109 (2002)). In this assessment, courts consider the totality of the circumstances to determine if the agency satisfied RCW 42.56.100. Id.

In Cantu, in response to a public records request, the Yakima School District failed to respond within five business days, missed its estimated records production timelines, failed to allocate sufficient resources to answer the request, ignored inquiries by the requester for up to 45 days, and ceased all work on the request for months at a time. Id. at 94-95. This conduct rose to the level of constructive denial. Id. at 94; see also C.S.A. v. Bellevue Sch. Dist. No. 405, ___ Wn. App. 2d ___, 557 P.3d 268, 281-83 (2024) (school district lacked diligence under the PRA when it did not communicate with requester or take steps to fulfill a records request for one year, delayed responsive records, and wrongfully redacted some of the delayed records).

Here, for much of the life of the request, District staff were under the mistaken belief that records related to the ongoing investigation were exempt from production. Without a directive to prioritize specific records, Enlow prioritized the timely production of records that he knew were non-exempt before working on records that had been flagged as exempt, albeit erroneously. The District then timely produced all the records. The District processed the request diligently and within the parameters provided to it by the requester. Thornewell conceded she makes no assertion of a lack of diligence in the overall production of records.

12

Objectively, from Thornewell's perspective, the District was answering the request diligently. It therefore did not constructively deny Thornewell's request or any part of it.

D

Thornewell argues that if the District's internal belief about the investigative records exemption were to go unpunished, then agencies would be incentivized to withhold records based on unasserted exemptions for long stretches of time. We are not persuaded by this argument. The parties agree that agencies may prioritize specific categories of records, thus forcing the exemption issue sooner. See RCW 42.56.100. Thornewell points to a risk of agencies abusing the rule of diligence by intentionally delaying production of embarrassing or time-sensitive records until later installments, but that risk may be mitigated and specific matters advanced by the requester through prioritization. And if an agency attempted to use internal dialogue about an exemption in bad faith to delay production then it would not be acting diligently. Conversely, if an agency were subject to penalties under the PRA merely for an initial erroneous exemption determination ultimately corrected through timely production, then agencies would be incentivized to avoid installments and produce records in a single large production. This could impair the public's timely access to public records. The rule requiring diligence effectively balances these two risks.

III

Thornewell challenges on appeal the superior court's refusal to consider certain evidence she submitted drawn from the parties' settlement negotiations, that the trial court concluded was inadmissible under ER 408. However, Thornewell offered this evidence as relevant only to assessment of penalties under the PRA. We have reviewed the evidence stricken by the trial court and it does not alter our conclusion. Because we conclude Thornewell does not show a violation of the PRA, it is not necessary to address the admissibility of evidence offered only on the subject of PRA penalties.

IV

Thornewell seeks attorney fees, citing RCW 42.56.550(4). Because Thornewell did not prevail in superior court, and has not prevailed on appeal, she is not entitled to costs, attorney's fees, or penalties.

Affirmed.

_____
Birk, J.

WE CONCUR:

_____  _____
Feldman, J.                         Díaz, J.

14