IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JOHN ANDREWS, | ) | No. 32288-2-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| WASHINGTON STATE PATROL, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — RCW 42.56.100 requires that an agency responding to public records requests provide "the fullest assistance to inquirers and the most timely possible action on requests for information." Some agencies are beleaguered with several hundred or even thousands of public records requests in a short period of time. When an agency, despite acting diligently, fails to comply with its self-imposed deadlines, a question arises: Should courts apply rigid rules that penalize a diligent but late response, or may courts take a flexible approach?

We determine that a flexible approach that focuses upon the thoroughness and diligence of an agency's response is most consistent with the concept of "fullest assistance." We, therefore, affirm the trial court's summary judgment order in favor of the Washington State Patrol (WSP).

## FACTS

After discovering that some attorney-client telephone conversations were being recorded in a WSP breath alcohol concentration room, John Andrews submitted a public records request on March 8, 2012, seeking the following:

> All of the following requests are limited to WSP District One office from January 1, 2009 involving [driving under the influence] suspect/defendant
> 1. Policies or procedures regarding recording attorney-client telephone conversations
> 2. Copy of all recorded attorney-client telephone conversations
> 3. Copies of any documents authorizing the WSP to record attorney-client phone calls
> 4. Copies of phone records of all lines on which attorney-client telephone conversations have been recorded

Clerk's Papers (CP) at 6.

On March 15, 2012, the WSP sent Mr. Andrews an initial response letter that acknowledged the request and estimated about 20 days to produce responsive records. On April 11, 2012, the WSP's public records officer, Gretchen Dolan, sent Mr. Andrews an e-mail that extended the estimated response period for another 20 days. In her

2

message, she explained that "[a]dditional time is required to research this request, notify involved parties, and/or prepare records for dissemination." CP at 8. Mr. Andrews left messages with Ms. Dolan about the delay. Ms. Dolan did not return his telephone calls. Ms. Dolan did not send another extension letter on May 1, 2012. This oversight was due to the volume of pending public records requests. Between January 1, 2012, and March 8, 2012, the WSP had received approximately 2,307 public records requests and subpoenas duces tecum and, since March 15, 2012, it had received an additional 1,882 such requests.

On May 3, 2012, Mr. Andrews filed a lawsuit against the WSP for violation of the Public Records Act (PRA), chapter 42.56 RCW, alleging the WSP had "failed to produce records after its own time estimates" and had not "provided a reasonable estimate of time to produce the records [or] provided the fullest assistance." CP at 4. The WSP responded on May 9, 2012, and estimated it could produce the records by May 31, 2012. It explained that due in part to the sensitivity of the potentially confidential records, the search was more complex than initially contemplated.

The WSP later detailed the complexity of the search, noting that Ms. Dolan gathered the language line billing records from October 2011[1] to March 2012, computer aided dispatch (CAD) records from October 2011 to March 2012, the police officers' incident reports from the time and dates listed in the language line billing records, and the digital recordings. Ms. Dolan then reviewed the incident reports that corresponded to the digital recordings to determine whether the officer noted that the suspect was connected with an attorney. To preserve the confidentiality of the attorney-client conversation, WSP personnel were instructed not to listen to these recordings as they searched for records. Based on this review, Ms. Dolan learned the language line, which provides an interpreter to translate implied consent warnings or other information to a person suspected of driving under the influence, had been called 39 times for about 30 arrests.[2] Ms. Dolan then located four incident reports that referenced calls to an attorney.

As of May 8, 2012, Ms. Dolan was still waiting for information regarding whether other language line calls involved communications between a suspect and an attorney. The WSP explained that it was waiting for two recordings from District 1's dispatch, two

---

[1] WSP, per internal procedures, does not keep records indefinitely. Mr. Andrews does not contest WSP's inability to produce records prior to October 2011.

[2] The WSP explained that officers may need to call the language line multiple times for a single arrest because the officer may become disconnected from the call and need to redial the language line to contact the interpreter.

recordings from the District 1's direct line to the language line, and five incident reports to review for references of connecting the suspect to an attorney. The WSP also noted that with respect to Mr. Andrews's request for policies and procedures for recording attorney-client telephone conversations, Ms. Dolan had researched the WSP regulation manual and asked personnel in the Field Operations Bureau and the Communications Division whether they had responsive records. On May 25, 2012, the WSP provided a complete response to the request for records, together with a detailed redaction log.

On December 19, 2012, the WSP moved for summary judgment dismissal of Mr. Andrews's lawsuit, arguing that the PRA lacks any provision that expressly requires an agency to produce public records by the agency's estimated response date. In its memorandum in support of summary judgment, it also pointed out that the WSP's meticulous search to identify responsive records justified extending the deadline and that, ultimately, it took less than 90 days to disclose the responsive documents. The WSP stated that seven WSP personnel assisted with locating the language line billings, preserving the recordings, locating the incident reports, and determining which recordings may have contained conversations between attorneys and suspects. These employees included the District 1 public records coordinator, the communications manager, communications supervisors, office staff, and Ms. Dolan.

Mr. Andrews filed a cross motion for summary judgment, contending the WSP "violated the Public Records Act by unreasonably requesting three 20-day extensions for a limited records request, ignoring two of its own deadlines, and failing to timely produce requested records." CP at 103. He maintained that the WSP should have been bound by its time estimates, given the limited request for documents. Notably—both below and on appeal—neither party argued that genuine issues of material fact preclude granting summary judgment.

The trial court granted the WSP's motion for summary judgment and dismissed Mr. Andrews's lawsuit. It framed the issue as "whether or not the production of the documents were in a time that [was] reasonable and that the time estimates were reasonable." Report of Proceedings (RP) at 5. The court found the WSP's time estimates reasonable, given that the request had "four parts, and it specifically was requesting information that affected a third party's privacy rights." RP at 5. The court also noted that the WSP had to develop a meticulous protocol to obtain the records without listening to the telephone calls, which potentially contained private communications between an attorney and a suspect. The court also found that the WSP was dealing with over 1,000 requests during this time period.

Mr. Andrews appeals the summary judgment dismissal of his lawsuit.

ANALYSIS

Mr. Andrews contends the trial court erred in granting summary judgment in favor of the WSP because the uncontested facts show that the WSP violated the PRA's "fullest assistance requirement when it failed to provide documents or otherwise respond with an extension by its established deadlines, and altogether refused to communicate with the requester." Appellant's Reply Br. at 3. Thus, according to Mr. Andrews, the WSP should be subject to statutory penalties for each day that he was denied the right to inspect or copy the records. The WSP responds that an agency is not bound by its estimated response dates, arguing that the PRA does not provide a cause of action for an agency's "inadvertent oversight in neglecting to send out another extension letter or responding to phone calls." Br. of Resp't at 15.

*Standard of Review.* Judicial review of an agency's compliance under the PRA is de novo. *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 731, 174 P.3d 60 (2007) (citing RCW 42.56.550(3)). We also review a summary judgment order de novo, engaging in the same inquiry as the trial court. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). We construe the facts and reasonable inferences in favor of the nonmoving party. *Korslund v. DynCorp Tri-Cities Servs., Inc.*, 156 Wn.2d 168, 177, 125 P.3d 119

7

(2005). Summary judgment is appropriate if reasonable persons could reach only one conclusion from the evidence presented. *Id.* In an action to enforce the PRA, the burden of proof is on the agency to show that the agency's estimated response time was reasonable. RCW 42.56.550(2).

*PRA Compliance.* "The [PRA] is a strongly worded mandate for broad disclosure of public records." *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978). The PRA requires every government agency to disclose any public record upon request, unless an enumerated exemption applies. *Sanders v. State*, 169 Wn.2d 827, 836, 240 P.3d 120 (2010); RCW 42.56.070(1). The act requires agencies to provide the "fullest assistance" and the "most timely possible action on requests for information." RCW 42.56.100. The government agency receiving a request for public records must respond within five business days by (1) providing the records, (2) denying the request, or (3) providing a reasonable estimate of the time within which to respond to the request. RCW 42.56.520.

The PRA provides a cause of action for two types of violations: (1) when an agency wrongfully denies an opportunity to inspect or copy a public record, or (2) when an agency has not made a reasonable estimate of the time required to respond to the request. RCW 42.56.550(1), (2). If the requester prevails regarding one of these

violations, the PRA provides an award of "all costs, including reasonable attorney fees." RCW 42.56.550(4). It also gives courts the discretion to "award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record." RCW 42.56.550(4).

The PRA contains no provision requiring an agency to strictly comply with its estimated production dates. In fact, the statute gives an agency additional time to respond to a request based upon the need to "locate and assemble the information requested." RCW 42.56.520. "Extended estimates are appropriate when the circumstances have changed." WAC 44-14-04003(6).

In *Ockerman v. King County Department of Developmental and Environmental Services*, 102 Wn. App. 212, 6 P.3d 1214 (2000), Division One of this court considered whether an agency must explain its estimated disclosure date. The court concluded that since the PRA lacked any provision requiring an agency to explain its estimate, the PRA did not impose such a requirement:

> Had the legislature intended that an explanation of the reasonable time estimate be included in the response, it could have said so. We note that the statute expressly requires an agency to provide a written statement of its specific reasons if it denies a record request. Reading these two provisions together, it is clear that the express requirement for an explanation [when an agency denies a request] and the absence of such a requirement [when an agency estimates the disclosure date] was a conscious decision by the legislature.

9

*Id.* at 217.

Similarly here, the legislature did not include a provision requiring an agency to disclose records within its initial estimated response date. Moreover, RCW 42.56.520 does not limit the number of extensions an agency may require to respond to a request. The statute simply requires an agency to provide a "reasonable" estimate, not a precise or exact estimate, recognizing that agencies may need more time than initially anticipated to locate the requested records. RCW 42.56.520.

Nevertheless, citing *Violante v. King County Fire District No. 20*, 114 Wn. App. 565, 59 P.3d 109 (2002), Mr. Andrews argues that the WSP bound itself when it initially estimated it could produce the documents by April 4, 2012, and May 1, 2012. He argues, "[b]ecause WSP should have responded to [him] by its set deadlines (even if the response was to estimate an extension), its penalties should be assessed at the number of days between the deadline and WSP's next time estimate." Br. of Appellant at 8-9. Thus, according to Mr. Andrews, he is entitled to penalties for 11 days, which encompass April 4 to April 11, and May 1 to May 5.

As just noted, however, RCW 42.56.520 plainly grants additional time to respond when needed to locate the requested information. In *Violante*, moreover, the only issue was "whether the [requester's] lawsuit was a step reasonably regarded as necessary to

10

obtain the requested information." *Violante*, 114 Wn. App. at 569. The *Violante* court did not address whether an agency's failure to meet its own estimated date of production is automatically a PRA violation.

Here, once the WSP realized that the requested recordings might contain privileged conversations between suspects and their attorneys, which implicated third party privacy rights, disclosure by the initial estimated response date was not feasible. To protect these privacy rights, the WSP developed a methodology to identify responsive recordings without listening to the recordings. This pool of responsive records included nearly six months of digital recordings. As a result, the WSP extended the estimated response date to May 1, 2012, but inadvertently neglected to send another extension letter to Mr. Andrews, due to more than 1,000 additional public records requests.

Mr. Andrews correctly concedes that whether an agency complies with the PRA is a fact specific inquiry and must be decided on a case-by-case basis. Although RCW 42.56.100 requires that agencies provide "the fullest assistance to inquirers and the most timely possible action on requests for information," the statute does not envision a mechanically strict finding of a PRA violation whenever timelines are missed. Rather, the purpose of the PRA is for agencies to respond with reasonable thoroughness and diligence to public records requests. The WSP's thoroughness of response is not an issue

11

No. 32288-2-III
*Andrews v. Wash. State Patrol*

in this case. The uncontested facts in this case establish the WSP acted diligently. We, therefore, affirm the lower court's summary judgment dismissal of Mr. Andrews's lawsuit.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, C.J.

12