# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ARTHUR WEST, | No. 54872-1-II |
| Appellant, | |
| v. | |
| DEPARTMENT OF FISH AND WILDLIFE, | UNPUBLISHED OPINION |
| Respondent. | |

VELJACIC, J. — Arthur West appeals the superior court's order denying his motion for summary judgment, which dismissed his Public Records Act (PRA)[1] claims against the Department of Fish and Wildlife (WDFW). West contends that the superior court erred in dismissing his PRA claims because the WDFW failed to maintain the rulemaking files at issue at the time of his request, as required by the Washington Administrative Procedure Act (APA), which in turn amounted to an actionable violation of the PRA. West appears to argue that the superior court erred in dismissing his PRA claims because the WDFW's estimated response times were unreasonable. West also appears to argue that the superior court erred in concluding that the WDFW acted with reasonable thoroughness and diligence in its response because the WDFW unduly delayed the disclosure of the requested records in violation of the PRA.

We hold that the WDFW's alleged failure to timely maintain the rulemaking files at issue under APA is not actionable under the PRA. We also hold that the superior court did not err in concluding that the WDFW's estimated response times were reasonable. We further hold that the

---

[1] Ch. 42.56 RCW.

WDFW acted with reasonable thoroughness and diligence in its response, and therefore, did not unduly delay the production of the requested records. Accordingly, we affirm the superior court's order denying West's motion for summary judgment, which dismissed his PRA claims.

FACTS

I.    THE WDFW'S RESPONSE TO WEST'S PRA REQUEST

On May 29, 2019, West submitted a public records request to the WDFW. West requested a copy of:

> 1. The official Rule-making file for the 2018 "North of Falcon" related permanent rules[;] 2. The official Rule-making file for the 2019 "North of Falcon" related May 6 Emergency Rule[;] 3. The official Rulemaking file for any proposed permanent 2019 fishing rules for which a publication has been made.

Clerks Papers (CP) at 52. The rulemaking files for 2018 and 2019 are voluminous in nature—each totaling over 10 gigabytes in size.[2]

Anne Masias is the Public Records Officer for the WDFW. As the Public Records Officer, Masias receives and reviews all public records requests submitted to the WDFW. Other than herself, only three other WDFW staff members, called Public Records Analysts, respond to PRA requests for the entire agency. The WDFW generally responds to PRA requests in the order they are received. Masias either responds to a PRA request herself or assigns a records analyst to do so. Relevant here, when Masias received West's PRA request, she understood that he sought the WDFW's 2018 and 2019 North of Falcon rulemaking files. Masias assigned Jennifer Brown, one of the records analysts, to respond to West's PRA request.

---

[2] Specifically, the 2018 rule-making file contains approximately 399 records totaling approximately 4,355 pages, and the 2019 rule-making file contains approximately 1,756 records. Noelle Chung, counsel for the WDFW, declared that "[i]t is not possible at this time to give a 'page count' for the 2019 rule-making file, as it contains many native files not yet reduced to printable .pdf, such as Excel worksheets. Further, these estimates do not include the additional . . . audio recordings in the rule-making files." CP at 86.

On May 30, Brown responded to West's PRA request by acknowledging receipt and providing him with two hyperlinks to the WDFW's website. One hyperlink contained information about the North of Falcon process and the other contained information about the WDFW's rulemaking process. Brown also responded by advising West that the WDFW needed additional time to "search, collect and review any records potentially responsive to this request." CP at 55. Brown anticipated that she would provide an updated response no later than July 19.

The WDFW consists of multiple programs located in six different regions across the state. Each program and region has a designated Public Records Coordinator, who works directly with WDFW staff to search and identify responsive records. Once a PRA request is assigned, the record analyst reaches out to the program and region that they believe holds the responsive records. The records coordinator then provides the potentially responsive records to the assigned records analyst. Once the records are provided, the assigned records analyst reviews the records to determine whether any exemptions apply or whether it should notify impacted third parties.

On May 30, Brown e-mailed Kelly McDermott, the records coordinator for the WDFW fish program, concerning West's PRA request. McDermott worked with fish program staff to search and identify records responsive to West's PRA request. In addition to West's request, McDermott declared that she was processing 61 other PRA requests.

Scott Bird was the WDFW's Rules Coordinator for the 2018 and 2019 North of Falcon seasons. He was heavily involved in compiling and organizing the rulemaking files for those seasons. The WDFW intended to provide the same records to West. However, Bird left the WDFW around July 15, 2019.

On July 19, the WDFW had an installment of records ready for production. Brown realized that they may not be the same set of records that had been compiled and organized by Bird. Masias declared that,

> [b]ecause [] Bird had recently left the agency, and because staff who had sent records to the Public Records Unit had not been involved in collecting, organizing, or designating the 2018 and 2019 North of Falcon rulemaking files, I, in an abundance of caution, instructed [] Brown to ensure the correct 2018 and 2019 North of Falcon rulemaking files were provided to [] West.

CP at 44. That same day, Brown notified West that the WDFW needed additional time to process his request and stated that she would provide an updated response by August 8.

On August 8, Brown e-mailed West the first installment of responsive records. The first installment consisted of the 2018 and 2019 North of Falcon rulemaking files, which existed at the time of West's request and were compiled by Bird prior to his departure. Masias declared that approximately 815 records were provided in unredacted form. Brown advised that she would provide an updated response no later than September 25.

On September 25, Brown e-mailed West the second installment of responsive records. Masias declared that "around 777 records . . . were provided in unredacted form, and that these records were responsive to Items 1, 2, and 3 [of West's PRA request]." CP at 45. Masias further declared that some of the records may be duplicative because the 2018 and 2019 rulemaking files were already produced and because of the internal miscommunication that occurred on July 19. Brown advised that she would provide an updated response no later than November 13.

On October 31, Brown left the WDFW. As a result, Masias took over approximately 80 public records requests that had been assigned to her, including West's, in addition to her existing workload. After Brown left, only two full-time staff members within the Public Records Unit, including Masias, were managing public records requests on the WDFW's behalf.

4

Masias did not realize that the third installment of records were due to West until about November 26, 2019, almost two weeks after the anticipated November 13 response date that Brown had provided. However, due to Brown leaving and additional staff turnover, Masias needed more time to produce the third installment of records. On November 26, Masias notified West that due to Brown's departure, she would provide the next installment of records or an updated response by January 29, 2020.

On January 29, Masias experienced technological problems. A WDFW employee notified West that Masias would provide the next installment of responsive records by January 31.

On January 31, Masias provided West with the third installment of responsive records. Masias declared that the third installment consisted of all remaining records responsive to the second item of West's PRA request in unredacted form. Masias notified West that the next installment of responsive records would be provided by March 24.

On March 2, the WDFW Public Records Unit began transitioning to full-time remote work due to the global health crisis caused by COVID-19. On March 16, Governor Jay Inslee issued a shelter-in-place order in response to the crisis. Around that time, all WDFW staff began working remotely. Thus, the WDFW advised PRA requestors that response times would be longer than usual.

On March 24, Masias e-mailed West the fourth installment of responsive records. Masias declared that "around 506 pages of records (26 records) responsive to Item 3" were produced in unredacted form. CP at 46. This installment included one 2019 fishing rule that was processed outside of the North of Falcon process. Masias advised West that the next installment of records would be produced by May 21.

5

McDermott declared that, "[i]n May of 2020, four rulemaking files were newly identified as responsive to Item 3 of [West's PRA request]." CP at 77. These were the 2019 fishing rule files that were processed outside of the North of Falcon process. As a result, there were a total of seven rulemaking files which the WDFW had determined were responsive to West's PRA request. One of the rulemaking files was not complete at this time.

On May 21, Masias e-mailed West the fifth installment of responsive records. Masias declared that "around 357 pages of records (111 records) responsive to Item 3" were produced in unredacted form. CP at 47. This installment included "3 out of 5 rulemaking files identified in May 2020 as responsive to Item 3 of [West's PRA request]." CP at 47. Masias notified West that the next installment of records would be produced by July 2.

On June 17, Masias e-mailed West the sixth installment of responsive records. Masias declared that this installment "consists of the one remaining 2019 rulemaking file that was responsive to [West's PRA request]." CP at 342. Masias notified West that she believed that the WDFW had completed its response to his PRA request. However, Masias stated that she would conduct one final review to ensure completion and expected to respond by August 4.

As of May 22, the WDFW had 191 open PRA requests, which included West's. Masias declared that she was responsible for responding to 94 of those requests, which also included West's.

II.    PROCEDURAL HISTORY

On February 20, 2020, West filed a complaint in Thurston County Superior Court alleging that the WDFW violated the PRA. Relevant here, West alleged that the WDFW violated the PRA by "unreasonably delaying or denying disclosure of records . . . and by failing to provide a reasonable estimate." CP at 3.

6

On April 27, West moved for summary judgment. Relevant here, the superior court concluded that the WDFW's response was reasonably diligent and thorough in compliance with the PRA given the unique facts of this case. The court further concluded that the WDFW's estimates of time in responding to West's request were reasonable under these unique circumstances. Accordingly, the court denied West's motion for summary judgment and dismissed his PRA claims against the WDFW. West appeals.

## ANALYSIS

I.    STANDARD OF REVIEW

"We review de novo an agency's action in responding to a PRA request." *Freedom Found. v. Dep't of Soc. & Health Servs.*, 9 Wn. App. 2d 654, 663, 445 P.3d 971 (2019); RCW 42.56.550(3). "We stand in the same position as the trial court on PRA matters when the record consists of documentary evidence." *West v. City of Puyallup*, 2 Wn. App. 2d 586, 592, 410 P.3d 1197 (2018).

"We also review a summary judgment order de novo, engaging in the same inquiry as the trial court." *Andrews v. Wash. State Patrol*, 183 Wn. App. 644, 650, 334 P.3d 94 (2014). We construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *West*, 2 Wn. App. 2d at 592. "Summary judgment is appropriate if reasonable persons could reach only one conclusion from the evidence presented." *Andrews*, 183 Wn. App. at 651.

II.    PRA LEGAL PRINCIPLES

The PRA mandates the broad disclosure of public records. *Freedom Found.*, 9 Wn. App. 2d at 663; *Andrews*, 183 Wn. App. at 651. "Accordingly, state agencies have 'an affirmative obligation to disclose records requested under the PRA unless a specific exemption applies.'"

7

*Freedom Found.*, 9 Wn. App. 2d at 663 (quoting *SEIU 775 v. Dep't of Soc. & Health Servs.*, 198 Wn. App. 745, 749, 396 P.3d 369 (2017)).

"An agency must respond promptly to a public records request." *Rufin v. City of Seattle*, 199 Wn. App. 348, 359, 398 P.3d 1237 (2017); RCW 42.56.520(1). The government agency receiving a public records request must respond within five business days. RCW 42.56.520(1). An agency must provide the records, deny the request, or respond in one of three other ways. RCW 42.56.520(1); *Freedom Found.*, 9 Wn. App. 2d at 665. One of those ways is to acknowledge receipt of the request and provide "a reasonable estimate of the time the agency . . . will require to respond to the request." RCW 42.56.520(1)(c).

Under the PRA, an agency must provide "the fullest assistance to inquirers and the most timely possible action on requests for information." RCW 42.56.100. "In determining whether an agency acted promptly in producing responsive records we examine whether the agency's response was thorough and diligent. Whether the agency responded with reasonable thoroughness and diligence is a fact-specific inquiry." *Freedom Found.*, 9 Wn. App. 2d at 673 (internal citation omitted).

"The PRA provides a cause of action for two types of violations: (1) when an agency wrongfully denies an opportunity to inspect or copy a public record, or (2) when an agency has not made a reasonable estimate of the time required to respond to the request." *Andrews*, 183 Wn. App. at 651; RCW 42.56.550(1), (2).

An agency is permitted to make the records available on an installment basis. RCW 42.56.080(2). The PRA does not require an agency to include an estimate of when it will fully respond to the request in its initial response. *Health Pros Nw., Inc. v. State*, 10 Wn. App. 2d 605, 622, 449 P.3d 303 (2019), *review denied*, 194 Wn.2d 1025 (2020). Additionally, "[t]he PRA

contains no provision requiring an agency to strictly comply with its estimated production dates. In fact, the statute gives an agency additional time to respond to a request based on the need to 'locate and assemble the information requested.'" *Andrews*, 183 Wn. App. at 651-52 (quoting RCW 42.56.520(2)). "Extended estimates are appropriate when the circumstances have changed." WAC 44-14-04003(7).

Washington courts have recognized that the reasonableness of an estimated response time may depend on the number of records requested, the difficulty in gathering and reviewing the requested records, or other factors deemed relevant to the facts of the case. *See Freedom Found.*, 9 Wn. App. 2d at 666-67; *see also Ockerman v. King County Dep't of Developmental & Envtl. Servs.*, 102 Wn. App. 212, 218, 6 P.3d 1214 (2000). The burden of proof is on the agency to show that its estimated response times are reasonable. RCW 42.56.550(2).

III. VIOLATIONS OF OTHER STATUTES

West contends that, under RCW 34.05.370, the WDFW should have maintained the rulemaking files at issue at the time of his request in a way that permitted prompt release. By failing to disclose the rulemaking files on request, West argues that the WDFW's estimated response times were unreasonable, and therefore, the trial court erred in denying his motion for summary judgment. Specifically, West contends that the principles of statutory interpretation support his proposition that a violation of an agency's duty to maintain a rulemaking file under the APA can form the basis for a cause of action under the PRA. We disagree.

The APA provides that "[e]ach agency shall maintain an official rule-making file for each rule that it (a) proposes by publication in the state register, or (b) adopts." RCW 34.05.370(1). The APA further provides that "[t]he file and materials incorporated by reference shall be available for public inspection." RCW 34.05.370(1).

If a person's "rights are violated by an agency's failure to perform a duty that is required by law to be performed," then they "may file a petition for review pursuant to RCW 34.05.514, seeking an order pursuant to this subsection requiring performance." RCW 34.05.570(4)(b). Furthermore, the APA provides "*the exclusive means of judicial review of agency action.*" RCW 34.05.510 (emphasis added). And "agency action" means "the implementation or enforcement of a statute." RCW 34.05.010(3).

Here, West's argument is based on the WDFW's alleged failure to maintain the rulemaking files at issue in a way that made them promptly available for public inspection. If West believes that the WDFW violated their duty to maintain a rulemaking file under RCW 34.05.370, then he must seek an order pursuant to the APA to address that error because that statute provides the exclusive means to review such agency action. RCW 34.05.570(4)(b); RCW 34.05.510. Accordingly, we conclude that West's argument fails.[3]

West also appears to argue that the superior court erred by failing to harmonize the PRA with the Fish and Wildlife Code, chapter 77.04 RCW, because that statute supports the immediate disclosure of the rulemaking files at issue.

Here, West does not provide argument as to how a violation of RCW 77.04.013, which is a legislative intent statement, can form the basis of a cause of action under RCW 42.56.550(2). Rather, West quotes the statute in passing without any substantive analysis. "'Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.'" *In re Guardianship of Ursich*, 10 Wn. App. 2d 263, 278, 448 P.3d 112 (2019) (quoting *Holland v. City*

---

[3] Regardless, we note that RCW 34.05.370 does not require an agency to produce an official rulemaking file within a specific time frame.

10

*of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)). Accordingly, we decline to address West's argument based on RCW 77.04.013.

IV.     TIMING OF PRODUCTION

A.     Reasonableness of the WDFW's Time Estimates

West appears to argue that the superior court erred in denying his motion for summary judgment because the WDFW's estimated response times were unreasonable. We disagree.

Here, the WDFW's estimated response times were reasonable.[4] The record shows that the records analyst had to forward the request to another department in order to locate the documents. Once the records were identified, the records analyst had to review the records for applicable exemptions and redactions before production to West. This process is necessarily time consuming especially because the rulemaking files for the 2018 and 2019 North of Falcon seasons were voluminous—each totaling over 10 gigabytes in size.

Additionally, the record shows that two key WDFW staff members left the agency in the midst of West's PRA request—Bird, the agency's Rules Coordinator who was instrumental in organizing the rulemaking files at issue, and Brown, one of the three records analysts for the entire agency, who had been personally responsible for compiling records for the request at issue here. Their departure necessarily impacted the WDFW's estimated response times to West's request.

Furthermore, the records unit processed West's request in addition to their existing duties and other public records requests that they were responsible for. Specifically, Masias declared that she was responsible for 94 of the 191 PRA requests for the entire agency. The high volume of

---

[4] West does not appear to take issue with any particular estimate or any of the WDFW's time extensions. Regardless, "[t]he PRA contains no provision requiring an agency to strictly comply with its estimated production dates." *Andrews*, 183 Wn. App. at 651. And "[e]xtended estimates are appropriate when the circumstances have changed." WAC 44-14-04003(7).

requests that Masias was responsible for necessarily impacted the estimated response times to West's request. This partially occurred during the global health crisis caused by COVID-19, which required WDFW staff to work from home and also impacted response times.

Based on these unique circumstances, we conclude that the WDFW's estimated response times, which ranged from about two to three months between each installment, were reasonable.

West argues that the superior court erred because "the WDFW failed to produce an estimate for the first substantive installment earlier than August 8th." Br. of Appellant at 25. Contrary to West's claim, the WDFW responded one day after his request and estimated that it would produce the first installment of records by July 19, 2019. Therefore, West's claim is plainly incorrect.

West also appears to argue that the superior court erred because the WDFW failed to give him a reasonable estimate of when it would fully respond to his PRA request regarding the 2019 rulemaking files.[5] However, as discussed above, the PRA does not require an agency to include an estimate of when it will fully respond to the request, as long as it gives an estimated date of its first installment. *Health Pros. Nw., Inc.*, 10 Wn. App. 2d at 622. West's argument fails.

B.     Undue Delay

West appears to argue that the WDFW unduly delayed the disclosure of the 2019 rulemaking files and did not provide the records in the order that he desired, which violates the PRA. We disagree.

As discussed above, an agency must provide "the fullest assistance to inquirers and the most timely possible action on requests for information." RCW 42.56.100. "In determining

---

[5] West also mentions the Records Retention Act, chapter 40.14 RCW, in advancing this argument. But he does not appear to argue that we should incorporate the record retention provisions of chapter 40.14 RCW into the PRA. Rather, he appears to take issue with the fact that there was "no reasonable estimate for the[] partial or complete disclosure" of the 2019 rulemaking files. Br. of Appellant at 26. Therefore, we do not address West's mention of the Record Retention Act.

whether an agency acted promptly in producing responsive records we examine whether the agency's response was thorough and diligent. Whether the agency responded with reasonable thoroughness and diligence is a fact-specific inquiry." *Freedom Found.*, 9 Wn. App. 2d at 673 (internal citation omitted).

Here, the WDFW acted with reasonable thoroughness and diligence in its response to West's request. As discussed above, West's request was voluminous and the WDFW lost key staff members, which impacted the timing of the disclosures. And due to the record analyst's departure, Masias' workload increased, which also impacted the timing of the disclosures. By March 2020, the global health crisis caused by COVID-19 ensued. The WDFW advised that this would impact response times. Despite the foregoing, the WDFW kept in line with its estimated response dates. To the extent it could not honor those dates, the record demonstrates that the WDFW notified West and provided the records as quickly as practicable. Based on these circumstances, we conclude that the WDFW acted with reasonable thoroughness and diligence, and therefore, promptly responded to West's PRA request. There was no undue delay.

Furthermore, nothing in the PRA requires an agency to prioritize certain requested records over others. "The PRA does not 'require public agencies to be mind readers.'" *Levy v. Snohomish County*, 167 Wn. App. 94, 98, 272 P.3d 874 (2012) (quoting *Bonamy v. City of Seattle*, 92 Wn. App. 403, 409, 960 P.2d 447 (1998)). Absent authority to the contrary, we decline to hold that an agency must prioritize certain records over others. West's argument fails.

We affirm the superior court's order denying West's motion for summary judgment, which dismissed his PRA claims against the WDFW.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Maxa, J.

Glasgow, A.C.J.